**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CASE NO. 5:11 CR 339** |
| | ) | |
| **PLAINTIFF,** | ) | **JUDGE JOHN ADAMS** |
| | ) | |
| **vs.** | ) | |
| | ) | **DEFENDANT JASON HERCEG'S** |
| **JASON HERCEG** | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| **DEFENDANT.** | ) | |

Now comes Defendant, by and through counsel, and respectfully submits this sentencing memorandum for the court's consideration pursuant to Local Criminal Rule 32.2(c).

## MEMORANDUM

### I. PERSONAL HISTORY

Jason Herceg is 37 years old and has been a lifelong resident of Northeast Ohio. On June 8, 2013 Jason married his longtime girlfriend, Anna Meighan. The marriage was postponed for a long time since it was unknown when the government intended to eventually charge him with a federal offense and when he would be sentenced. It has been 21 months since he netered a guilty plea and his life has been on hold since that time. The couple do not have children and reside in Fairlawn, Ohio.

Mr. Herceg graduated from Stow-Munroe Falls High School in 1994 and enrolled in the University of Akron. In 1999 he graduated with a Bachelor's degree in Science.

Mr. Herceg has been a productive and law abiding member of his community for his entire adult life until the instant offenses occurred approximately 7 years ago. The offenses occurred during a time period when Mr. Herceg developed an interest in real estate business that were formed and became operation from roughly 2004-2007. The companies were created with

the purpose of real estate development and obtaining mortgage loans for buyers. In 2007 Mr. Herceg left these businesses and the real estate industry and worked four years as a manager at Tradesmen International., a staffing company. He was terminated when the charges in this case became public. He was undeterred and found another job and has remained employed throughout the pendency of this matter.

## I. INTRODUCTION

For the reasons that follow, it is respectfully requested that the court select a sentence at the low end of the applicable guideline range if the court intends to impose a guideline sentence. Such a sentence would be fair, just, and reasonable under the particular circumstances of this case and applicable principles of federal sentencing law. The proposed sentence also gives due consideration to Mr. Herceg's involvement in the instant offense, the personal background of Mr. Herceg described in his Presentence Investigation Report ("PSR"), and the numerous letters from Mr. Herceg's family and friends. [1]

Mr. Herceg is very remorseful for his conduct and has accepted responsibility for his actions and for the poor judgment that he made in connection with this business relationships. He acknowledges that he never should have aligned himself with Defendant Jack Coppenger, who was the architect of the large and complex mortgage fraud scheme. Coppenger convinced Mr. Herceg and countless other defendants that their conduct was legal.

**The Offense and the Plea Agreement**

When Mr. Herceg was approximately 29years old he became a member of HH&N, LLC, which was designed to be an investment company for Florida real estate. Mr. Herceg, co – defendants Jason Workman, Andy Norman and unindicted co-conspirator Roger Evans knew each other for several years from school and basketball and decided to enter the real estate business because it was burgeoning at that time throughout the United States. Unfortunately, these young men had no idea that their world would be forever impacted when they met Jack Coppenger. Their legitimate intentions to run a successful business was subverted by Coppenger. These young men, along with the numerous borrowers and other people and businesses that encountered Coppenger were persuaded by Coppenger's sales abilities and had no idea that he was the ultimate con man. Coppenger's description of the real estate development he had in place if florida and his concepts of structuring lucrative deals led Herceg and his friends to embark on unfortunate decisions that will impact them for the rest of their lives. Herceg, Workman, Norman and Evans agreed to enter the world of real estate investing with Coppenger and the use of "straw buyers", although that terms was unknown to them at the time. The men consulted with a real estate attorney about the structure of this business concept that was crafted by Coppenger and as a result joint venture agreements were created for them to use with straw buyers to purchase Coppengers properties. Herceg and his codefendants did not notify the lenders that Joint Venture Agreements existed and that the borrowers were not making the mortgage payments but the payments were to be made by HH&N. In addition, Herceg accepts full responsibility for not disclosing to the lenders that the borrowers were receiving money from the close of the loans. Herceg accepts full responsibility for assisting the inflation of some bank accounts for some borrowers to enhance their assets so that the loan risk was artificially reduced. Herceg also admits that he was involved in the flip of the property known as the "View" and did not disclose certain details about the deal which would have impacted the Schindelwolf's decision to participate in the transaction. Although Nate Schindlewolf and Andrew

Norman abused their very close relationship they had with the Schindelwolfs, Mr.Herceg regrettably agreed to participate in the deal and did not provide full disclosure of all of the facts that could have prevented the deal from closing.

The conspiracy period lasted from 2005 -2007, about 18 months, Mr. Herceg extracated himself from that business and was not involved in criminal conduct prior to that time period and has not been involved in any illegal conduct since .

## III. LAW AND ARGUMENT

### A. Current State of Sentencing Law in the Wake of Booker and its Progeny

Sentencing procedure underwent a fundamental change with the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). Whereas the Federal Sentencing Guidelines previously were virtually mandatory in nature, today they are "effectively advisory" in all cases. *Id.* at 245. The net result is that district courts must now impose a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). *See United States v. Foreman*, 436 F.3d 638, 644 n.1 (6th Cir. 2006) ("It is worth noting that a district court's job is not to impose a 'reasonable' sentence. Rather, a district court's mandate is to impose a 'sentence, sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2)."); *see also United States v. Ranum*, 353 F. Supp.2d 984, 987 (E.D. Wis. 2005) ("[C]ourts are free to disagree, in individual cases and in the exercise of discretion, with the actual range proposed by the guidelines, so long as the ultimate sentence is reasonable and carefully supported by reasons tied to the § 3553(a) factors.").

The Supreme Court's directive that district courts are to impose sentences in light of all of the sentencing criteria set forth in § 3553 was made "pellucidly clear" in its recent decision in *Gall v. United States*, 128 S. Ct. 586 (2007). In *Gall*, the Court rejected both "an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range"

and "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.* at 595. Instead, the Court established the following procedure that district courts are to follow when imposing sentence:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one.

After settling on the appropriate sentence, a court must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. *Id.* at 596-597 (citations and footnote omitted); *see also United States v. Grossman*, 513 F.3d 592, 596 (6th Cir. 2008) ("*Gall* shows that the sentencing process involves an exercise in judgment, not a mathematical proof"). Importantly, the "sufficient but not greater than necessary" standard of § 3553 test is no mere guideline. Rather, its sets an independent upper limit on the sentence that may be imposed by a Court. It is often referred to as the "parsimony provision." *See, e.g., United States v. Carey*, 368 F. Supp.2d 891, 895 n.4 (E.D. Wis. 2005); *United States v. Brown*, 356 F. Supp.2d 470, 479 (M.D. Pa. 2005).

**B. Guideline Calculations**

According to the Plea Agreement, Mr. Herceg's Base Offense Level is (6). The Plea Agreement calculated a twenty (20) level enhancement pursuant to USSG § 2B1.1(b)(1). The Plea Agreement calls for an additional (2) level increase pursuant to USSG § 3B1.3(b) because of his role as a manager. The Adjusted Offense Level is (28). The Plea Agreement anticipates a three-level reduction for acceptance of responsibility so that the Adjusted Offense Level is (25). Mr. Herceg expects the government to seek a downward departure of 4 levels pursuant to USSG 5K1.1, The Total Offense Level will be (21). Criminal History Cat. I. (**37-46 months**).

**C. Application of the Statutory Sentencing Criteria**

**§3553(a)(1) – Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

It is respectfully submitted that the history and characteristics of Mr. Herceg mitigate in favor of a sentence at the low end of the applicable guidelines, especially since Mr. Herceg is 37 years old, does not have a criminal history, has a credible and consistent employment background and has strong ties to the community.

Although Mr. Herceg is prohibited from seeking a downward departure, however, he does contend that consideration should be given to the principles in Application Note 19(c) to § 2B1.1 to determine the appropriateness of the sentence. The defense respectfully submits that the above information demonstrates that Mr. Herceg's conduct was consistent with the conduct of co-defendant Jason Workman, his business partner, and that the loss attributed to him significantly overstates the seriousness of his offense. *See e.g., Forchette*, 220 F. Supp. 2d at 930. Mr. Herceg did not devise the fraudulent scheme, did not establish the Florida real estate development project, did not locate or recruit the majority of the buyers, did not develop the pricing of the properties, and his gain was grossly disproportionate to the amount of the loss; *United States v. Costello*, 16 F. Supp. 2d 36 (D. Mass. 1998) (granting a six-

level departure for a defendant whose "cut" of the scheme was less than 1% of the value of the goods.

The circumstances under which this offense occurred will likely never recur due to Mr. Herceg's age, the significant influencing factors at the time of the offense and the devastating collateral consequences of the federal criminal conviction. The outcome of this case will impact him for the rest of his life. He will be on supervised release into his 40's, he will not earn an income over the next few years because of his incarceration, and the likelihood of future employment for a person in their 40's with a criminal conviction for fraud is ominous. In addition, he will be financially saddled with an enormous restitution judgment that cannot be discharged in bankruptcy court and will destroy his creditworthiness. His decision to engage in these activities seven years ago has also caused significant emotional distress upon his family and his new bride. This matter attracted publicity and the Herceg family are scorned and embarrassed because of his conduct. Jason is a daily witness to the devastation that his actions have caused to those that love him. The 19 chahracter letters that are attached as exhibits to this Memorandum were provided to this Court in an effort to demonstrate Mr. herceg's true character and not what is limited to the facts in the PSR, the Inofrmation or the government's arguments. The letters are from people that have known Jason his entire life and thay overwhelmingly demonstrate that sepite his poor judgment , that he is a man of integrity, etics, devotion and is trustworthy. The friends, family and associates note that this waiting period of almost two years to be sentenced has been a horrible psychological strain. His life and the life of his fiancée have been devastated by this delay that he wished he could have started to put behind him 2 years ago.

**§3553(a)(2)(A) – Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment**

In *United States v. Ortiz,* 502 F. Supp.2d 712, 715 (N.D. Ohio 2007) the court held "[I]t

is clear that the district courts have tremendous sentencing discretion in the final determination of the sentence imposed.”.

> It is not necessary to incarcerate to promote respect for the law or to provide just punishment. As the Supreme Court stated in *Gall*, where it affirmed a sentence of probation instead of a guideline sentence of 30-37 months imprisonment: We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms.

According to the United States Sentencing Commission’s May 2004 Report, “[r]recidivism rates decline relatively consistently as age increases. Generally, the younger the offender, the more likely the offender recidivates . . . . Among all offenders under age 21, the recidivism rate is 35.5 percent, while offenders over age 50 have a recidivism rate of 9.5 percent.” *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, 12 (May2004). Likewise Mr. Herceg’s criminal history category of I, makes it far less likely that he will recidivate. *See id.* at 12 (“Recidivism risk increases with each CHC . . . offenders in CHC I have a substantially lower risk of recidivating within two years (13.8%) than do offenders in CHC VI (55.2%).”). Given Mr. Herceg’s personal history and characteristics and the circumstances of his offense, these considerations weigh in favor of sentencing Mr. Herceg to a low end guideline sentence. This type of sentence will still reflect the seriousness of the offense, promote respect for the law, and provide a just punishment.

**§3553(a)(2)(B) & (C) – General and Specific Deterrence**

Mr. Herceg does not have prior convictions and is facing a potential imprisonment range of 37-46 months. This type of sentence for an offender that committed the offenses 7-8 years ago and who does not have a criminal history strongly suggests that both general and specific deterrence will be accomplished by a sentence in the low end of the applicable guideline range. Likewise, Mr. Herceg entered a guilty plea almost 2 years ago and his life has been radically

altered since he has been on pretrial release and has been tremendously anxious about the finality of the case for almost two years. Although this excessive waiting period is not true "incarceration" it has been significant punishment since his freedom and psychological well being has been destroyed by the long delay. Like the defendant in *United States v. Myers*, "[t]here is no danger that this Defendant will commit another crime in the future. He is of no harm to his community and poses no future threat." 353 F. Supp.2d 1026, 1031 (S.D. Iowa 2005).

**§3553(a)(2)(D) – Provide Education, Training, and Care for the Defendant**

Mr. Herceg is not in need of any form of education, training, or care that must be obtained during incarceration. As a result, this factor favors a sentence that is minimally restrictive.

**§3553(a)(3) – Kinds of Sentences Available**

The applicable guideline range falls within Zone C of the Sentencing Table, therefore, the minimum term of imprisonment may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided that at least one-half of the minimum term is satisfied by imprisonment.

Mr. Herceg's punishment will continue long after his release from prison since he is subject to Supervised Release and will need to find employment as a convicted felon in his mid 40's.

**§3553(a)(4) – Sentencing Guideline Considerations**

Chapter 5, Part H of the Federal Sentencing Guideline Manual lists specific offender characteristics. The Introductory Commentary to Part H states in pertinent part:

> The Commission has determined that certain circumstances are not ordinarily relevant to the determination of whether a sentence should be outside the applicable guideline range. Unless expressly stated, this does not mean that the Commission views such circumstances as necessarily inappropriate to the determination of the sentence within the applicable guideline range or to the determination of various other incidents of an appropriate sentence (e.g., the appropriate conditions of probation or supervised release). (Emphasis supplied).

Mr. Herceg respectfully requests that this Court consider the following Sentencing Guideline Consideration in determining an appropriate sentence within the applicable guideline range. U.S.S.G. § 5H1.6 permits the Court to consider Mr. Herceg's family ties and responsibilities when considering an appropriate sentence within the applicable guideline range. Mr. Herceg resides with his wife and they rely on each other for financial assistance. Obviously, any period of time in which Mr. Herceg is absent from his family will create a hardship for his family.

**§3553(a)(6)—Avoiding Unwarranted Sentence Disparities**

Mr. Herceg respectfully submits that the unique circumstances of this case suggest that a sentence at the low end of the guideline range is appropriate. This consideration would not pose as an unwarranted sentence disparity. There are numerous codefendants that were straw buyers that have received probation. Mr. Herceg contends that his sentence merits consideration at the low end of he applicable guideline range.

**§3553(a)(7) – Providing Restitution to Victims of the Offense**

Pursuant to the Plea Agreement, Mr. Herceg has agreed to an order of restitution however, he has not been provided any documentation from the government that reflects the basis for the loss calculations despite outstanding discovery requests. Defendant objects to the total restitution amount that was provided by the probation department in the final disclosure that was filed on June 10, 2013.

**IV. CONCLUSION**

Mr. Herceg is deeply remorseful, ashamed, and embarrassed by his conduct and he poses no further threat to the community. He has been significantly punished by having been found guilty of a felony and the trauma it has caused his family. His life with his new wife will be put on hold again for several years and he realizes the impact this could have on his relationship and his future.

For the foregoing reasons, counsel prays that this Court consider a reasonable punishment with any other conditions this Court deems appropriate.

Respectfully submitted,

/s/ Craig T. Weintraub
CRAIG T. WEINTRAUB, ESQ. (#0040095)
55 Public Square
Suite 1600
Cleveland, Ohio 44113
(216) 896-9090
(216) 456-2310 facsimile
cweintraub@sbcglobal.net
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

A copy of the foregoing was filed electronically and notice will be sent to all parties electronically by operation of the court's electronic filing system.

s/ Craig T. Weintraub
CRAIG T. WEINTRAUB, ESQ.